UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMBERLIE HOYDIC, | : |
| Plaintiff, | : |
| V. | : CASE NO. 3:04-CV-1703 (RNC) |
| GENESCO, INC., ET AL., | : |
| Defendants. | : |

SUMMARY ORDER

Plaintiff brings this case against her former employer, Genesco, Inc., and supervisor, Steven Lunn, claiming, among other things, sexual harassment, constructive discharge and retaliation in violation of Title VII and Connecticut law. The case is before the court on defendants' motion for summary judgment [Doc. 38], defendants' renewed motion for leave to amend [Doc. 52] and plaintiff's motion to strike [Doc. 45]. For the reasons set forth below, summary judgment is granted in favor of the defendants on the Title VII claims, and the court declines to exercise supplemental jurisdiction over the pendent state law claims, which are dismissed without prejudice. The motions to amend and strike, which relate to the state law claims, are denied as moot.

Discussion

I. Summary Judgment

Summary judgment may be granted if the record before the court, viewed most favorably to the plaintiff, fails to raise a genuine issue of material fact for trial and the defendants are

entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).

   A.   Hostile Work Environment

   To establish a hostile work environment claim under Title VII, plaintiff must show harassing behavior sufficiently severe or pervasive to alter the conditions of her employment.  Penn. State Police v. Suders, 542 U.S. 129, 133 (2004).  Crediting plaintiff's version of the facts, the harassing behavior she allegedly suffered while working with Lunn is sufficiently severe to support a hostile work environment claim.  Though the conduct occurred on just one occasion, it allegedly involved an explicit request for oral sex, repeated touching of a sexually suggestive nature, and a serious physical assault.

   An employer may avoid liability for a hostile work environment claim on the basis of the Ellerth/Faragher defense, which requires the employer to show: "(1) that it had installed a readily accessible and effective policy for reporting and resolving complaints of sexual harassment, and (2) that the plaintiff unreasonably failed to avail herself of that [policy]." Suders, 542 U.S. at 134.  Plaintiff contends that Genesco's sexual harassment policy does not protect it against liability in this case because 1) Genesco did not provide a copy of the policy to plaintiff, or any other employee; 2) the language of the policy is ambiguous as to the employee's obligation to report

incidents of sexual harassment as well as the channels by which to report the incidents; 3) Genesco failed to comply with a state regulation requiring periodic sexual harassment training; and 4) Genesco did not routinely contact mall security to ascertain whether complaints of sexual harassment had been filed. These contentions are unavailing.

The fact that Genesco did not give plaintiff a copy of the policy is irrelevant because she signed the policy when she began her employment.[1] Genesco also included a copy of the policy in a human resources manual that was available at the store where plaintiff worked. The policy was also posted in the storeroom. Plaintiff has not shown that providing a copy to every employee is necessary to establish the Ellerth/Faragher defense.

Sexual harassment is clearly defined in the policy, and is clearly branded a violation of federal and state law and company policy. While the policy uses permissive terms, such as "encourages," regarding the employee's obligation to report incidents of harassment, the policy makes the reporting procedure clear. Specifically, the policy states that an employee should immediately discuss any incidents of sexual harassment with her supervisor. However, the employee is not required to report such incidents to either the alleged harasser or the employee's

---

[1] Plaintiff denies actually reading or understanding the policy but she concedes that she signed it.

immediate supervisor and may contact human resources directly. Finally, the policy contains a certification by the employee which states that the employee understands that she is responsible for reporting incidents of illegal harassment.

Genesco's alleged failure to provide state-mandated sexual harassment training for defendant Lunn is irrelevant because plaintiff did not pursue an internal grievance concerning Lunn's conduct. Put another way, plaintiff cannot attack the effectiveness of Genesco's anti-harassment policy when she did not attempt to make use of it. Defendant's logs of Title VII complaints are largely irrelevant for the same reason. If anything, the logs suggest that Genesco's policy is effective in that the company is logging, tracking, and resolving complaints. Any other inferences from the logs would be speculative as the logs lack any context. In any event, an "'employer need not prove success in preventing harassing behavior in order to demonstrate that it exercised reasonable care in preventing and correcting sexually harassing conduct.'" <u>Whidbee v. Garzarelli Food Specialties, Inc.</u>, 223 F.3d 62, 72 (2d Cir. 2000) (quoting <u>Caridad v. Metro-North Commuter R.R.</u>, 191 F.3d 283, 295 (2d Cir. 1999)).

The <u>Ellerth/Faragher</u> defense may be overcome by proof that the plaintiff was constructively discharged. <u>See</u> <u>Suders</u>, 542 U.S. at 134. However, <u>Suders</u> adds an additional element to the

analysis: an "official act" must underlie the constructive discharge. Id. at 148. Official action involves "employer-sanctioned adverse action officially changing [the plaintiff's] employment status or situation, for example, a humiliating demotion, extreme cut in pay, or transfer to a position in which she would face unbearable working conditions." Id. at 134. Plaintiff does not allege any such official action. While defendant Lunn's conduct was egregious, there is no basis for finding that it was "employer-sanctioned." The Supreme Court has aptly described conduct like Lunn's as "'exceedingly unofficial and involv[ing] no direct exercise of company authority;' indeed, it is 'exactly the kind of wholly unauthorized conduct for which the affirmative defense was designed.'" Id. at 150 (quoting Reed v. MBNA Marketing Sys., Inc., 333 F.3d 27, 33 (1st Cir. 2003). Thus, plaintiff's hostile work environment claim cannot overcome the Ellerth/Faragher defense.

    B.   <u>Constructive Discharge</u>

Under Title VII, a constructive discharge occurs when an "employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 89 (2d Cir. 1996). "Working conditions are intolerable if they are 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt

5

compelled to resign.'" Id. (quoting Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1188 (2d Cir. 1987). Constructive discharge represents a "'worse case' harassment scenario, harassment ratcheted up to the breaking point." Suders, 542 U.S. at 147-48.

Plaintiff's constructive discharge claim fails because, even assuming she can prove the other elements of the claim, she has insufficient evidence to support a finding of deliberateness or intent on the part of Genesco. See Whidbee, 223 F.3d at 74 ("[S]omething beyond mere negligence or ineffectiveness is required" to establish deliberateness in a constructive discharge case.); Petrosino v. Bell Atlantic, 385 F.3d 210, 229-30 (2d Cir. 2004). She relies on a complaint made to mall security that might involve Lunn.[2] The complaint, filed three days before plaintiff started her employment, involved "two young females approximately 13 years old who stated they were very uncomfortable with over-friendly sales associates from Journeys. One of the females stated the associate was touching her hair and she did not feel comfortable. . . . [T]he employee . . . mentioned that as he tried to get the female's attention he reached out and by accident touched her head." (Pl. Mem. Opp. Summ. J. Ex. I). Assuming this complaint concerns conduct on the

---

[2] Plaintiff submits a second report clearly involving Lunn, but it involves a nonviolent dispute with an employee at another store and there is no suggestion that it involved sexual harassment. (Pl. Mem. Opp. Summ. J. Ex. J).

part of Lunn, there is no evidence from which a jury could reasonably infer that Genesco had any knowledge of it. (Pl. Local R. 56(a)2 Stmt. ¶ 13). Moreover, the complaint does not relate to working conditions the plaintiff complains about. "A constructive discharge occurs if a reasonable person <u>subjected to the same conditions as the plaintiff</u> would have felt compelled to step down." Chertkova, 92 F.3d at 90 (emphasis in original). Plaintiff offers no evidence that Genesco knew, or had reason to know, that the plaintiff was in jeopardy of being attacked by Lunn.[3]

C. Retaliation

Under Title VII, a retaliation claim requires proof that the plaintiff suffered an adverse employment action because she engaged in conduct protected by the statute. See Burlington N. and Santa Fe Ry., Co. v. White, 126 S.Ct. 2405, 2415 (2006); Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205-206 (2d Cir. 2006). Plaintiff alleges that she engaged in protected conduct by resisting Lunn's harassment and that he retaliated by subjecting her to more harassment. Assuming plaintiff's opposition to Lunn's harassment is the type of conduct that can support a retaliation claim, her claim fails

---

[3] Plaintiff also relies on Genesco's failure to provide Lunn with sexual harassment training as required by state law but this is insufficient to support a constructive discharge claim, whether considered alone or in combination with the other evidence in the case.

7

because Lunn's harassment does not qualify as an adverse employment action for this purpose, and no other adverse employment action is alleged.

Accordingly, the defendants are entitled to summary judgment dismissing the Title VII claims. Since these claims are being dismissed before trial, the court declines to exercise supplemental jurisdiction over the pendent state law claims. See 28 U.S.C. § 1367(a)(3).

II. Other Motions

Defendants' renewed motion for leave to amend [Doc. 52] and plaintiff's motion to strike [Doc. 45] raise issues bearing on plaintiff's state law claims. Because the court is not going to adjudicate the state law claims, these motions are denied as moot.

Conclusion

For the foregoing reasons, the defendants' motion for summary judgment is hereby granted, the Title VII claims are dismissed with prejudice, the state law claims are dismissed without prejudice, and the motions to amend and strike are denied. The Clerk may close the file.

So ordered this 31st day of March 2007.

```
        _____/s/_____
        Robert N. Chatigny, U.S.D.J.
```